**Electronically Filed
Supreme Court
SCWC-18-0000599
01-OCT-2021
08:50 AM
Dkt. 17 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

SUSAN E. SHAW,
Petitioner/Defendant-Appellant.

_____

SCWC-18-0000599

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-18-0000599; 1CPC-17-0001118)

OCTOBER 1, 2021

RECKTENWALD, C.J., NAKAYAMA, McKENNA, AND WILSON, JJ.,
AND INTERMEDIATE COURT OF APPEALS JUDGE NAKASONE,
ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY WILSON, J.

## I.   INTRODUCTION

This case arises from Petitioner/Defendant-Appellant
Susan E. Shaw's ("Shaw") five-year prison sentence and
conviction for Computer Fraud in the Third Degree ("Computer
Fraud 3") and Fraudulent Use of a Credit Card ("Credit Card

Fraud"). Shaw appealed her Judgment of Conviction and Sentence to the Intermediate Court of Appeals ("ICA"). The ICA vacated the Circuit Court of the First Circuit's[1] ("circuit court") Judgment of Conviction and Sentence and remanded the case to the circuit court for further proceedings.

Shaw raises four primary points of error and alleges that the ICA erred: (1) when it held that the State of Hawai'i (the "State") need not allege that Shaw acted pursuant to a scheme or course of conduct for Computer Fraud 3 in the indictment; (2) when it held that the circuit court (a) did not err in instructing the jury on the definition of "inference" and (b) did not err in instructing the jury on the elements of Computer Fraud 3; (3) when it held that the circuit court did not err in denying her Motion to Dismiss with Prejudice; and (4) when it failed to address the issues related to (a) the sufficiency of evidence, (b) the admission of unsworn hearsay evidence, and (c) the numerous prejudicial evidentiary errors.

We hold that the ICA did not err when it held that aggregation of multiple transactions under Computer Fraud 3 is permissible. We further hold that the indictment was defective with respect to Count I, Computer Fraud 3, and that the denial of Shaw's Motion to Dismiss the Indictment was error.

_____

[1] The Honorable Fa'auuga L. To'oto'o presided.

2

Accordingly, we vacate the circuit court's order denying Shaw's Motion to Dismiss the Indictment for Count I, and remand with instructions to dismiss Count I without prejudice. Because the indictment for Count I, Computer Fraud 3 is dismissed without prejudice, we do not address Shaw's other points of error.

## II. BACKGROUND

The charges against Shaw arise from allegations that between January 16, 2017, through and including May 18, 2017, Shaw falsely inflated customer tips for 105 customers, totaling $717.35, at the restaurant where she worked as a server. Shaw was charged with one count of Computer Fraud 3, in violation of Hawai'i Revised Statutes ("HRS") § 708-891.6 (2014), and one count of Credit Card Fraud, in violation of HRS § 708-8100(1)(c) (2014).[2] After a jury trial, Shaw was convicted on both counts.

---

[2] The August 15, 2017 indictment states:

> The Grand Jury charges:
> COUNT I: On or about January 16, 2017, through and including May 18, 2017, in the City and County of Honolulu, State of Hawaii, Susan E. Shaw, did knowingly access a computer, computer system, or computer network with the intent to commit the offense of theft in the third degree, thereby committing the offense of Computer Fraud in the Third Degree in violation of Section 708-891.6 of the Hawaii Revised Statutes.
> A person commits the offense of theft in the third degree if she intentionally obtains and exerts control over property of another, the value of which exceeds Two Hundred and Fifty Dollars ($250.00), with intent to deprive the other of property valued in excess of Two Hundred and Fifty Dollars ($250.00). Sections 708-832(a)(a) and 708-830(1) of the Hawaii Revised Statutes. (HPD Report Number 17189819-002). Count I related to the access and use of a computer, to with a "point of sale computer terminal", with

(continued . . .)

3

Prior to the jury trial, Shaw filed a Motion to Dismiss with Prejudice on the basis that the State failed to adduce sufficient evidence to establish probable cause for either of the two counts at the grand jury proceedings because the State excluded elements of the offense. Additionally, Shaw contended that Computer Fraud 3 could only be prosecuted based on a single victim of theft, and Credit Card Fraud could only be prosecuted based on the use of a single credit card or credit card number and a single credit card victim. Shaw argued that if HRS § 708-801(6) allows aggregation of theft amounts from a single victim or multiple victims, the State failed to adduce evidence that Shaw acted pursuant to a single scheme or course of conduct required for aggregation. The circuit court denied

---

(continued . . .)

intent commit [sic] theft of money valued in excess of $250.00, and the defendant did, in fact, so obtain money valued in excess of $250.00.
COUNT II: On or about January 16, 2017, through and including May 18, 2017, in the City and County of Honolulu, State of Hawaii, Susan E. Shaw, with intent to defraud the issuer, or another person or organization providing money, services, or anything of value, or any other person, did use credit card numbers without the consent of the cardholders for the purpose of obtaining money or anything else of value, and the value of all money and other things of value so obtained exceeded Three Hundred Dollars ($300.00) in any six-month period, thereby committing the offense of Fraudulent Use of Credit Card, in violation of Sections 708-8100(1)(c) of the Hawaii Revised Statutes. (HPD Report no 17-189819-003). Count II related to the use of credit card numbers, without the cardholders' consent, for the purpose of obtaining money valued in excess of $300.00 during the time period specific herein, a period of less than six months, and the defendant di, in fact, so obtain money valued in excess of $300.00

4

Shaw's motion, finding that "overwhelming evidence" supported the indictment.

On July 30, 2018, Shaw appealed to the ICA. Relevant to this appeal, Shaw argued that the indictment was fatally defective for failing to allege that Shaw acted pursuant to a scheme or continuing course of conduct[3] and that the circuit court erred in denying Shaw's Motion to Dismiss with Prejudice because the State failed to adduce sufficient evidence to establish probable cause that Shaw used a computer to steal more than $250.00 from a single victim. See HRS § 708-891.6 ("A person commits the offense of computer fraud in the third degree if the person knowingly accesses a computer, computer system, or computer network with the intent to commit the offense of theft in the third or fourth degree."); HRS § 708-832(1)(a) (2016) ("A person commits the offense of theft in the third degree if the person commits theft . . . [o]f property or services the value of which exceeds $250[.]").

---

[3] The indictment in Count I read as follows:

COUNT I: On or about January 16, 2017, through and including May 18, 2017, in the City and County of Honolulu, State of Hawaii, Susan E. Shaw, did knowingly access a computer, computer system, or computer network with the intent to commit the offense of theft in the third degree, thereby committing the offense of Computer Fraud in the Third Degree in violation of Section 708-891.6 of the Hawaii Revised Statutes.

5

The ICA vacated the circuit court's Judgment of Conviction and Sentence, vacated Shaw's conviction for Credit Card Fraud under Count II, and remanded the case for a new trial on Count I, Computer Fraud 3. The ICA concluded that the indictment for Count I was legally sufficient, and that Shaw failed to show, under Motta/Wells,[4] Count I could not be construed to charge Computer Fraud 3. The ICA also concluded that Shaw failed to show that she suffered prejudice from the State's failure to allege a scheme or course of conduct in Count I. Additionally, the ICA held that the State was not barred from aggregating multiple alleged instances of theft in charging Shaw with Computer Fraud 3:

> In Count I, Shaw was charged with Computer Fraud 3, which requires an allegation that the charged individual "knowingly accesse[d] a computer, computer system, or computer network with the intent to commit the offense of theft in the third or fourth degree." HRS § 708-891.6 (emphasis added). Thus, because Computer Fraud 3 is predicated on theft in the third or fourth degree, it follows that Computer Fraud 3 may also be charged as a continuing course of conduct.

The ICA further held that the indictment as a whole charged Shaw with Computer Fraud 3 under a continuing course of conduct theory because both counts referred to the same four-month time period when the alleged crimes occurred.

-----

[4] An appellate court will "not reverse a conviction based upon a defective indictment unless the defendant can show prejudice or that the indictment cannot within reason be construed to charge a crime." State v. Motta, 66 Haw. 89, 91, 657 P.2d 1019, 1020 (1983).

For the Credit Card Fraud charge, the ICA held that the circuit court erred when it failed to dismiss Count II for lack of sufficient evidence to establish probable cause because the plain language of HRS § 708-8100(2) did not allow the offense of Credit Card Fraud to be prosecuted as a class C felony based on an aggregation of the values of multiple transactions involving more than one credit card or credit card number.  In light of this holding, the ICA held that the circuit court erred when it failed to dismiss Count II.[5]  For Count I, Computer Fraud 3, the ICA held that Shaw's challenge for lack of probable cause was rendered moot when she was subsequently convicted at trial, and held that there were no "unusual circumstances" in this case to warrant a review of probable cause.  But, the ICA held that Shaw's conviction for Computer Fraud 3 must be vacated and remanded for a new trial because the instruction regarding Computer Fraud 3 did not submit to the jury the factual question of whether Shaw engaged in one scheme or course of conduct.

Shaw argues before this court that the ICA erred when it held that the State need not allege scheme in the indictment

---

[5]    The ICA's dismissal of Count II, Credit Card Fraud, was not appealed to this court and will not be addressed in this opinion's discussion.

and that the circuit court did not err in denying Shaw's Motion to Dismiss with Prejudice.

### III. STANDARDS OF REVIEW

#### A. Statutory Interpretation

The interpretation of a statute is a question of law reviewable de novo. State v. Arceo, 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996). We follow several established rules of statutory construction:

> First, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is obtained primarily from the language contained in the statute[s] themselves. Second, [l]aws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another. And, third, [t]he legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction[,] and illogicality.

Id. at 19, 928 P.2d at 861 (alterations in original) (citations and quotations omitted).

#### B. Motion to Dismiss Indictment

We review de novo a circuit court's order denying a motion to dismiss an indictment based on sufficiency of the evidence to support the indictment. State v. Taylor, 126 Hawai'i 205, 215, 269 P.3d 740, 750 (2011).

> In reviewing the sufficiency of the evidence to establish probable cause before the grand jury, every legitimate inference that may be drawn from the evidence must be drawn in favor of the indictment and neither the trial court nor the appellate court on review may substitute its judgment as to the weight of the evidence for that of the Grand Jury. The evidence to support an indictment need not be sufficient to support a conviction.

8

Id. (quoting State v. Ganal, 81 Hawai'i 358, 367, 917 P.2d 370, 379 (1996)).

## IV.  DISCUSSION

**A.  The ICA did not err when it held that multiple transactions can be aggregated pursuant to HRS § 708-801(6) for Computer Fraud 3.**

Shaw contends that aggregation of multiple transactions pursuant to HRS § 708-801(6) is impermissible for proving Computer Fraud 3.  The ICA was correct in its determination that aggregation of multiple transactions pursuant to HRS § 708-801(6) is permissible for Computer Fraud 3. However, we respectfully disagree with the ICA's reasoning.

The ICA concluded that the theft statute supports aggregation of multiple transactions for Computer Fraud 3.  It is true that this court has previously held that theft may be charged under a continuing course of conduct theory:

> The language of the theft statute indicates that theft may be charged on a continuing conduct theory.  The theft statute provides that a person commits theft if the person "obtains, or exerts control over, the property of another by deception with intent to deprive the other of the property."  HRS § 708-830(2) (2014).  Similarly, a person commits theft in the second degree "if the person commits theft . . . [o]f property or services the value of which exceeds $300."  HRS § 708-831(1)(b).

> Here, the Legislature's decision to define theft as obtaining or exerting control over "property or services," see HRS §§ 708-830.5(1)(a), 708-831(1)(b), 708-832(1)(a), 708-833(1), and not "a piece of property or a service," indicates that the Legislature did not necessarily intend that theft be charged individually.  Furthermore, HRS § 708-801(6) provides that "[a]mounts involved in thefts committed pursuant to one scheme or course of conduct, whether the property taken be of one person or several persons, may be aggregated in determining the class or grade of the offense."  This indicates that the Legislature

9

> explicitly considered that theft could be charged on a continuing course of conduct theory.

State v. Yokota, 143 Hawai'i 200, 205-06, 426 P.3d 424, 429-30 (2018).

However, that Computer Fraud 3 is "predicated" on theft in the third or fourth degree does not answer the question of whether Computer Fraud 3 can be charged as a continuing course of conduct. This is because Computer Fraud requires a specific intent to commit theft in the third or fourth degree. The continuing offense doctrine asks "whether the individual acts are prohibited, or the course of action which they constitute." Blockburger v. United States, 284 U.S. 299, 302 (1932) (emphasis added). The continuous offense doctrine therefore turns on whether the legislature envisioned that the conduct of the offense could constitute a continuous course of action. Yokota, 143 Hawai'i at 205, 426 P.3d at 429 ("[T]he test to determine whether a crime may be charged on a continuous conduct theory is whether the language, structure, and purpose of the statute reveals a legislative intent to criminalize continuing conduct." (quoting State v. Decoite, 132 Hawai'i 436, 438, 323 P.3d 80, 81 (2014))). Whether the proscribed conduct "is statutorily defined as an uninterrupted and continuing course of conduct, or manifests a plain legislative purpose to

be treated as such, or both" is critical to the continuing offense doctrine.  Arceo, 84 Hawai'i at 19, 928 P.2d at 861.

If the statute "comprehend[s] acts that essentially are of a transitory nature or brief duration," then the legislature likely did not contemplate the crime to be continuing; but if the act proscribed by the statute "describes an ongoing course of conduct," that "connotes a legislative design to make an aspect of [the crime] continuing[.]"  State v. Temple, 65 Haw. 261, 267, 650 P.2d 1358, 1362 (1982).  Here, Computer Fraud 3 is defined as follows:  "A person commits the offense of computer fraud in the third degree if the person knowingly accesses a computer, computer system, or computer network with the intent to commit the offense of theft in the third or fourth degree."  HRS § 708-891.6 (emphasis added).  "'Access' means to gain entry to, instruct, communicate with, store data in, retrieve data from, or otherwise make use of any resources of a computer, computer system, or computer network."  HRS § 708-890.  At least some of these acts "connote[] a legislative design to make an aspect of [Computer Fraud 3] continuing[.]"  Temple, 65 Haw. at 267, 650 P.2d at 1362.  At the least, "communicat[ing] with," "stor[ing] data in," "mak[ing] use of a computer, computer system, or computer network" reflect acts that are not "transitory . . . or brief," id., but instead "involve ongoing processes[.]"  Decoite, 132

11

Hawai'i at 439, 323 P.3d at 83. Cf. State v. Martin, 62 Haw. 364, 366, 616 P.2d 193, 195-96 (1980) (finding continuous theft on the state when defendant filed fraudulent public assistance forms); State v. Stenger, 122 Hawai'i 271, 279, 226 P.3d 441, 449 (2010) (finding continuous theft on the state when defendant continued to receive public assistance when no longer needed). Thus, the ICA correctly held that aggregation of multiple transactions is permissible for Computer Fraud 3.

**B.    The ICA erred when it held that the State need not allege scheme in the charging document for Computer Fraud 3 under the Motta/Wells rule.**

The ICA incorrectly held that under the Motta/Wells rule the Count I charge for Computer Fraud 3 was legally sufficient because it was not necessary to include in the indictment language establishing that Shaw acted pursuant to a scheme or course of conduct. Because Count I failed to include the essential attendant circumstances element of scheme or course of conduct, it cannot be reasonably construed to charge a crime. As discussed below, even if the language in the indictment tracks the statutory offense language, that alone does not render a charge legally sufficient. When the indictment is read as a whole, Count I fails to charge a crime.

Under the Motta/Wells rule, if an objection to a deficient indictment is raised for the first time on appeal, the indictment must be liberally construed. Motta, 66 Haw. at 90,

12

657 P.2d at 1019-20; State v. Wells, 78 Hawai'i 373, 381, 894 P.2d 70, 78 (1995). An appellate court will "not reverse a conviction based upon a defective indictment unless the defendant can show prejudice or that the indictment cannot within reason be construed to charge a crime." Motta, 66 Haw. at 91, 657 P.2d at 1020. If an element of an offense is missing or an element in the charge does not "comport with its statutory definition," the charge cannot be reasonably construed to charge a crime. State v. Baker, 146 Hawai'i 299, 308, 463 P.3d 956, 965 (2020), as corrected (May 20, 2020) (citing State v. Pacquing, 139 Hawai'i 302, 308, 389 P.3d 897, 903 (2016); State v. Wheeler, 121 Hawai'i 383, 394, 219 P.3d 1173, 1181 (2009)). However, "one 'way in which an otherwise deficient count can be reasonably construed to charge a crime is by examination of the charge as a whole,'" State v. Tominiko, 126 Hawai'i 68, 76, 266 P.3d 1122, 1130 (2011) (quoting State v. Elliott, 77 Hawai'i 309, 312, 884 P.2d 372, 375 (1994)), which allows "two counts [to] be read together," id. This court "employ[s] practical considerations and common sense" when interpreting the indictment as a whole. State v. Sprattling, 99 Hawai'i 312, 319, 55 P.3d 276, 283 (2002). Additionally, this court has held that, in some cases, when the language of the charge tracked the statutory definition of the offense and all of the elements as defined in the statute

13

are alleged in the indictment, the indictment was not defective.

See State v. Treat, 67 Haw. 119, 120, 680 P.2d 250, 251 (1984).

Here, the Motta/Wells liberal construction rule

applies because Shaw challenged the sufficiency of the

indictment for the first time on appeal.  Based on the

Motta/Wells liberal construction rule, the ICA held that the

Computer Fraud 3 charge was legally sufficient and held that the

State was not required to "expressly allege in the Indictment

that Shaw engaged in a scheme or course of conduct" because the

Computer Fraud 3 charge "tracked" the language of the statutory

offense and the predicate theft offense, and all of the

statutory elements were included in the indictment.

1.  **Because the indictment did not allege that Shaw
    intended to commit theft in the fourth degree, and no
    transaction was greater than $250.00, the State was
    required to allege scheme or course of conduct in the
    indictment.**

The State alleged only that Shaw "did knowingly access

a computer . . . with the intent to commit the offense of theft

in the third degree, [and] thereby committed the offense" of

Computer Fraud 3.  (Emphasis added.)  Because the indictment did

not allege Shaw knowingly accessed a computer, computer system,

or computer network with the intent to commit the offense of

theft in the fourth degree, and since none of the individual

transactions were greater than $250.00, the State was required

to include in the indictment language that Shaw possessed the

14

intent to commit theft in the third degree through a continuing course of conduct over the four-month period.  The State failed to do so.

Shaw correctly contends that even under the Motta/Wells liberal construction rule, the indictment was insufficient.  The indictment failed to charge an essential attendant circumstances element.  See HRS § 702-205 ("The elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct[.]"); State v. Bovee, 139 Hawai'i 530, 538, 394 P.3d 760, 768 (2017).  In this case, the State aggregated the theft amounts from separate victims to reach the $250.00 threshold for Theft in the Third Degree necessary to prove Computer Fraud 3.  The State's prosecution of Shaw for Computer Fraud 3 necessarily required proof of multiple thefts committed pursuant to a common scheme or course of conduct because none of the individual thefts met the $250.00 statutory threshold.  Charging this crime under an aggregation theory is predicated on Shaw having committed the thefts pursuant to a scheme or course of conduct.  Thus, the indictment must allege that the defendant acted pursuant to a scheme or course of conduct when Computer Fraud 3 is charged based on an aggregation theory because scheme or course of conduct is an attendant circumstances element that the State must prove. Because the indictment did not include this element of scheme or

15

course of conduct, required for Computer Fraud 3 based upon an aggregation theory, the indictment failed to charge a crime.

> **2.  The fact that Count I, Computer Fraud 3, tracked the statutory offense language does not mean it was legally sufficient.**

The ICA was incorrect when it held that the charge was sufficient merely because the charge "tracked" the language of the statutory offense and the predicate theft offense, and all the statutory elements were included in the indictment.  This court has stated that a charge can be insufficient even when the charge tracks the language of the statute if it fails to sufficiently describe the crime:

> In some cases, however, a charge tracking the language of the statute defining the offense nevertheless violates an accused's due process rights.
>
> > This is so because although "some statutes in our criminal laws so clearly and specifically define[] the offense that nothing more is required in [a charge] than the adoption of language of the statute, other statutes fail to sufficiently describe the crime and [a charge] couched merely in the language of such a statute would violate due process."

State v. Nesmith, 127 Hawai'i 48, 53, 276 P.3d 617, 622 (2012) (emphases added) (quoting State v. Israel, 78 Hawai'i 66, 73, 890 P.2d 303, 310 (1995)).

The indictment in the instant case "fail[s] to sufficiently describe the crime" and, thus, the charge "couched merely in the [statutory] language . . . violate[s] due process."  See id.  As discussed above, to charge Shaw with

Computer Fraud 3 based on an aggregation theory, the State must show that Shaw acted pursuant to a scheme or course of conduct. If one of the individual transactions met the $250.00 statutory threshold, scheme or course of conduct need not be proved, and indictment language that simply tracks the language of the statute would be sufficient. But here, the individual transactions do not meet the statutory threshold, so the State must prove scheme or course of conduct. Thus, when an aggregation theory is used, a charge that simply tracks the language of the statute can violate due process even under the Motta/Wells liberal construction rule because scheme or course of conduct is necessary to prove Computer Fraud 3 based upon an aggregation theory.

3. **Count I is legally insufficient even if the indictment is read "as a whole."**

Even if Count I failed to charge a crime, the ICA concluded that "it is clear from reading the Indictment as a whole that the State charged Shaw with Computer Fraud 3 on a continuing course of conduct theory." Relying on Tominiko[6] and reading the two charges together, the ICA reasoned that, Charge

---

[6] In Tominiko, the defendant was charged with operating a vehicle under the influence of an intoxicant ("OVUII"). Tominiko, 126 Hawai'i at 71, 266 P.3d at 1125. The language charging OVUII was missing the element that the conduct occurred on a public roadway. Id. at 76, 266 P.3d at 1130. The supreme court read the indictment "as a whole" and held that the OVUII charge was not deficient because a separate count contained the necessary allegation and both counts referred to operating a motor vehicle on the same day in Honolulu, Hawai'i. Id.

I was sufficient because the two charges included the same time period and Charge II's plural language indicated multiple victims and instances of theft.

A key distinction between Tominiko and this case is that, in Tominiko, the other count explicitly included the essential element. Tominiko, 126 Hawai'i at 76, 266 P.3d at 1130 (holding that a charge that was missing the essential public road element was not insufficient when read "as a whole" with another charge that did include the essential public road element). Here, Charge II did not specifically allege scheme or course of conduct, but instead alluded to a scheme or course of conduct with the use of plural language, alleging that Shaw "did use credit card numbers without the consent of the cardholders for purpose of obtaining money, or anything else of value, and the value of all money and other things of value so obtained exceeded Three Hundred Dollars ($300.00) . . . ." Thus, Tominiko is not analogous because in Tominiko the other count explicitly included the required element, whereas, here, the other count implied scheme or course of conduct, without explicitly identifying it.

Analogizing to Tominiko, the ICA pointed to the same time period in both counts to support its conclusion that "both charges are based on the same underlying conduct." Once again, Tominiko is not analogous. In Tominiko, this court pointed to

18

the facts that both charges referred to operating a motor vehicle in Honolulu, Hawai'i on the same day to reach its conclusion that "it can be reasonably inferred that they refer to the same incident." Tominiko, 126 Hawai'i at 76, 266 P.3d at 1130. In this case, the ICA relied exclusively on the fact that the charges referenced the same location, Honolulu, Hawai'i, and the same four-month time period. The inference that the two counts refer to the same incidences cannot be "reasonably inferred" as in Tominiko. Four months is a much longer time period than one day, and the two charges could have referenced different activities during those four months. In Tominiko, the two charges were related to the same singular incident involving a "motor vehicle" that occured on the same day, whereas, here, there are multiple instances of theft, making it less apparent that the instances of theft by computer fraud referred to in Count I are the same instances referred to by Count II for Credit Card Fraud.

Notably, in Tominiko, both charges shared a common element: operating a motor vehicle.[7] Id. at 70, 266 P.3d at 1124. And the court pointed to this commonality when reading the indictment as a whole. Id. at 76, 266 P.3d at 1130. In

---

[7] In Tominiko, the defendant was charged with OVUII and Driving Without Motor Vehicle Insurance. 126 Hawai'i at 70, 266 P.3d at 1124.

contrast, an individual can commit Computer Fraud 3 without using credit cards and can commit Credit Card Fraud without using a computer. Therefore, the ICA's reliance on Tominiko is unfounded. The similarities between Count I and Count II are insufficient to support the argument that the two counts refer to the same underlying conduct. Therefore, the two counts cannot be "read as a whole," and the ICA erred when it concluded that Count I, Computer Fraud 3, could be reasonably construed to charge a crime.

Consequently, we conclude that Count I, Computer Fraud 3 was insufficient. See Wheeler, 121 Hawai'i at 394, 219 P.3d at 1181 (holding charge was insufficient when it failed to allege all of the essential elements of the offense charged).

## V. CONCLUSION

For the foregoing reasons, we hold that when Computer Fraud 3 is charged under an aggregation theory and none of the individual instances of theft meet the $250.00 statutory threshold, the State must allege the defendant acted pursuant to a scheme or course of conduct in the charging document. Accordingly, we affirm in part, and vacate in part, the ICA's June 19, 2020 judgment on appeal. Because Count I, Computer Fraud 3, did not contain an essential attendant circumstances element required for the offense charged, we vacate the circuit court's order denying Shaw's Motion to Dismiss the Indictment

20

for Count I, remand with instructions to dismiss Count I without prejudice, and remand for further proceedings consistent with this opinion.

| | |
|---|---|
| Taryn R. Tomasa for petitioner/defendant-appellant | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Chad M. Kumagai for respondent/plaintiff-appellee | /s/ Sabrina S. McKenna |
| | /s/ Michael D. Wilson |
| | /s/ Karen T. Nakasone |

